DISTRICT COURT OF THE UNITED STATES OF AMERICA   Civil Action No.: 19-cv-11795
SOUTHERN DISTRICT OF NEW YORK
_____X
Quinseya Johnson,
                        -Plaintiff

                                                                                                    **COMPLAINT**

         -against-

Starbucks,                                                                **JURY TRIAL**
                                                                                                       **DEMANDED**

                                                    -Defendant.                         **ECF CASE**
_____X

Plaintiff QUINSEYA JOHNSON (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, Kareem E. Abdo, Esq., complains against the above captioned Defendant, STARBUCKS (hereinafter referred to individually as "Defendant") and alleges as follows:

**PRELIMINARY STATEMENT**

1. This is a civil rights action in which the Plaintiff, QUINSEYA JOHNSON, seeks relief for the Defendant STARBUCKS's violations of his rights secured by the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e to 2000e-17.  Plaintiff sought and was issued a "right to sue" letter from the Equal Employment Opportunity Commission.  That letter is attached as EXHIBIT A.  Plaintiff seeks compensatory and punitive damages, an award of costs, interest and attorney's fees and such other and further relief as this honorable Court deems just and proper.

2. In addition, pursuant to 28 U.S. Code § 1367, Plaintiff asks this honorable court to exercise its supplemental jurisdiction over Plaintiff QUINSEYA JOHNSON's New York State and New York City claims as "they form part of the same case or controversy."

## JURISDICTION AND VENUE

3. This action is brought pursuant to 42 U.S.C. §§ 2000e to 2000e-17.  Jurisdiction is conferred upon this honorable Court by 28 U.S.C. § 1331, this being an action seeking redress for the violation of the Plaintiff's rights conferred by federal statute thus raising a federal question.

4. Pursuant to 28 U.S.C. § 1367, this honorable court may also exercise its supplemental jurisdiction over Plaintiff's state and city claims.

5. Venue in this District is proper under 28 U.S.C. § 1391 (b) and (c) in that Defendant, STARBUCKS, is administratively located in part within the Southern District of New York, and the events giving rise to this claim occurred within the boundaries of the Southern District of New York.

## JURY TRIAL DEMANDED

6. Plaintiff demands a trial by jury on each and every one of her claims as pleaded herein.

## THE PARTIES

7. Plaintiff is a resident of the State of New York, Bronx County.

8. Defendant STARBUCKS  is a company famously founded in Washington State, and likewise incorporated in the State of Washington.  Defendant STARBUCKS does business in the confines of this district as it maintains store locations in New York County, New York State, where the facts presented in this COMPLAINT occurred, as well as the other counties that make up this federal District.

## FACTS UNDERLYING THE ACTION

9. Plaintiff QUINSEYA JOHNSON is an individual, she is twenty-seven (27) years old.

10. Defendant STARBUCKS is a world famous purveyor of coffee, food and other consumables.

11. Plaintiff was an employee of Defendant STARBUCKS.  Plaintiff was hired on or about September 13, 2015 as a barista for a New York County store location of Defendant STARBUCKS.  Plaintiff was employed at a mid-town Manhattan location of Defendant STARBUCKS, in the busy Manhattan neighborhood that also has Penn Station within it's confines.

12. When Plaintiff was first hired her supervisor was Christopher Martinez.  Mr. Martinez left the store in or around the summer of 2018, and a new supervisor came into the store, Christian Mulero.

13. Plaintiff QUINSEYA JOHNSON was given a higher position under Mr. Mulero, barista trainer.  Generally at this time the relationship between Mr. Mulero and Plaintiff was fantastic.

14. Also in 2018, Plaintiff QUINSEYA JOHNSON, received the joyous news that she was about to become the matriarch in a new family.  Plaintiff QUINSEYA JOHNSON learned that she was pregnant in the fall of 2018.

15. Plaintiff QUINSEYA JOHNSON told her immediate supervisors she was pregnant at the beginning of November of 2018.

16. At the beginning of Plaintiff's pregnancy Plaintiff had many doctor appointments, as would be expected. Plaintiff QUINSEYA JOHNSON would provide management appointment letters from her doctor's office.

17. Despite the obvious dangers to the health of a pregnant woman, Plaintiff QUINSEYA JOHNSON had a work load consisting of going up and down the steps to the basement to grab five (5) to ten (10) pounds of coffee beans daily, often if not always multiple times a day. Indeed, Plaintiff QUINSEYA JOHNSON had to carry a variety of items up and down the stairs, Plaintiff QUINSYEA JOHNSON also was required to perform tasks requiring bending and lifting at positions where she either was bending and grabbing gallons of milk to make drinks for customers or bending and grabbing trays of food for stocking or other items out of the refrigerator. Furthermore, Plaintiff QUINSEYA JOHNSON had to fill the iced coffee dispenser, where she would have to lift three (3) liter buckets onto the counter and also fill iced tea dispensers, though, upon information and belief iced tea is lighter than iced coffee.

18. In addition to these strenuous tasks, Plaintiff QUINSEYA JOHNSON would also lift five pound bags over her head to grind coffee. This routine would occur two (2) to three (3) times daily. Plaintiff QUINSEYA JOHNSON also had to go up and down the stairs regularly to wipe down tables.

19. As stated in paragraph 15 of this COMPLAINT, Plaitnitff QUINSEYA JOHNSON informed Defendant STARBUCKS' management that she was pregnant but was still required to perform the tasks described in paragraphs 17 and 18.

20. Plaintiff QUINSEYA JOHNSON would try to take 5 minute breaks when she could somewhere during her shifts but that accommodation was not acceptable to Defendant STARBUCKS' management.

21. Plaintiff QUINSEYA JOHNSON decided to bring in extra documentation from her doctor asking for extra breaks because of the steps and lifting and bending.

22. In or around November 15th, 2018 Quinseya was working her usual shift of 5:00 am to 1:00 pm when she asked for a bathroom break. During this time, she noticed bleeding occurring. Plaintiff, to be expected, became nervous and started to panic. Plaitniff QUINSEYA JOHNSON called her mother. Plaitniff's mother said to call her doctor immediately. Plaintiff did so immediately. The doctor's office is in Plaintiff's home county of the Bronx, at Lebanon Hospital. Staff at the Lebanon Hospital office told Plaintiff to come in to be checked because the situation could be very serious for her pregnancy.

23. Plaintiff QUINSEYA JOHNSON went upstairs to speak with her manager, Angela, the Assistant Store Manager. Angela sent Plaintiff home immediately.

24. Plaintiff did as directed by her medical provider and went to her doctor's office. Plaintiff QUINSEYA JOHNSON's doctor asked her what what she was doing at the time she found out she was bleeding. Plaintiff explained to her doctor she was working at her job for Defendant STARBUCKS. The doctor then asked if Plaintiff's work required hard labor such as lifting and bending, Plaintiff replied yes to the doctor. The doctor told Plaintiff that she cannot do any of that type of labor, that it caused stress to Plaitniff's baby; and was the cause of Plaintiff QUINSEYA JOHNSON's bleeding. In addition, Plaintiff's doctor said that Plaintiff was dehydrated from this intensive labor.

5

25. Plaintiff QUINSEYA JOHNSON then decided to text message Angela to let her know what had occurred at her doctor's office. Angela offered colloquial assurances.

26. In early December Defendant STARBUCKS store manager, Christian Mulero asked Plaintiff QUINSEYA JOHNSON into his office and said, illegally, "I'm going to try to get you on maternity leave because of the absences you keep having." Plaintiff QUINSEYA JOHNSON responded by saying that she had many doctors appointments for the baby and that she also was feeling the effects of pregnancy. She emphasized that her doctor had told Plaintiff to, "take it easy," and that she, the Plaintiff in this action, was able to work despite the occasional appointment related to a pregnancy.

27. Plaintiff further expressed frustration that she was only three months pregnant and could work but was being pushed out because management did not want to let her work while attending to her pregnancy.

28. Furthermore, Plaintiff QUINSEYA JOHNSON thought to herself that she knew of another barista, Barbara, who, when she was pregnant, was asked only to handle the register duties at this location of Defendant STARBUCKS..

29. At about thus time, Jennifer Chin transferred to the shop as a manger of Defendant STARBUCKS. Ms. Chin came from another Defendant STARBUCKS store to the store Plaintiff QUINSEYA JOHNSON worked in. Plaintiff and Ms. Chin had a good working relationship and Ms. Chin would praise Plaintiff QUINSEYA JOHNSON on a regular basis for her work. Generally as has been the theme of this COMPLAINT Plaintiff QUINSEYA JOHNSON had a good professional relationship with her supervisors and co-workers; Plaintiff was the utmost professional.

30. Plaintiff QUINSEYA JOHNSON continued her work on behalf of Defendant STARBUCKS. At the same time or just about the same time there was another female co-worker, Rossana Lam, who became a coworker of Plaintiff. Ms. Lam constantly accused Plaintiff of being mean to her, Ms. Lam. This is despite no professional documentation to that effect.

31. By this time, Plaintiff had worked at Defendant STARBUCKS for about 4 years, and had shown nothing but professionalism and employee excellence.

32. At the beginning of these troubles with this Ms. Lam, Plaintiff chose to ignore the situation.

33. Plaintiff QUINSEYA JOHNSON opined to herself, that the frustration for this particular co-worker, Ms. Lam, stemmed from the fact that Plaintiff was a very respected barista; customers would often ask for Plaintiff QUINSEYA JOHNSON specifically when they came to this particular store of Defendant STARBUCKS where Plaintiff QUINSEYA JOHNSON was employed. Furthermore Plaintiff QUINSEYA JOHNSON also was a trainer for other baristas. Plaintiff QUINSEYA JOHNSON figured Ms. Lam probably wanted that same recognization.

34. The way Ms. Lam was going about it was strange however. Still Plaintiff QUINSEYA JOHNSON tried to ignore the situation. However, the situation began to affect Plaintiff's job. Plaintiff, as a barista for Defendant STARBUCKS for nearly four (4) years or so, would ask this new barista, Ms. Lam, to do something, as a barista with four (4) years of experience. Just as anyone with years of positive employment might do for a less-experienced employee.

35. Instead of being appreciative Ms. Lam would then run to Cristian Muelro saying that Plaintiff was bullying her.  Plaintiff QUINSEYA JOHNSON was called in the office by Cristian Mulero and was asked if Plaintiff was being mean to her.  Plaintiff said flatly that she hadn't but in an effort to be the bigger person and in a continued effort to be a professional Plaintiff went up to Rossana Lam and asked her if Plaintiff had been mean to her at the shop; told her that she was both sorry if she, Plaintiff QUINSEYA JOHNSON, had been mean to her and that she wasn't a mean person, all in an effort to offer an olive branch.  After Plaintiff spoke to Ms. Lam Plaintiff QUINSEYA JOHNSON thought the situation was resolved, but unfortunately it wasn't.

36. Working in such a small space with limited area baristas, at this location of Defendant STARBUCKS and, upon information and belief, generally at Defendant STARBUCKS locations, have to move at a quick pace and slide quickly around one another. Baristas brush past one another on a daily basis, upon information and belief, it is simply part of the position with Defendant STARBUCKS.  One day while working Plaintiff was walking to hand off something to a customer when Cristian Mulero pulled her aside, and asked Plaintiff to apologize to this problematic barista because "she feels you pushed her and now is crying" Plaintiff expressed shock.

37. Plaintiff and her manager, Cristian Mulero stepped off the work floor to the back. Plaintiff told him this situation was going too far.  Plaintiff tried to ignore Ms. Lam, figuring she just wanted attention but that clearly had not worked.

38. It seemed clear to Plaintiff QUINSEYA JOHNSON by this point that the her problematic co-worker, Rossana Lam had become fixated upon Plaintiff.  Upon information and belief Plaintiff expressed these frustrations with Mr. Mulero.  Plaintiff had been a barista with

Defendant STARBUCKS, at that particular location, for close to 4 years and this co-worker had been a barista for only a few months.  This situation caused Plaintiff to have to walk on egg-shells, but still that was not good enough, as Ms. Lam would complain about Plaintiff on a daily basis.

39.  Plaintiff's manager, Cristian Mulero, began laughing and asked Plaintiff to apologize just to appease this co-worker.  In an effort to be an upmost professional, Plaintiff did apologize in the way suggested by her supervisor without making any further frustration known, although obviously this was a very frustrating situation for her.

40.  About two weeks went by following the allegations made in the preceding paragraphs 37 through 39.  Plaintiff QUINSEYA JOHNSON noticed that her hours had been cut, but more so, Plaintiff noticed that this new barista, Rosanna Lam, the one that had been causing her headache had increased hours.

41.  Plaintiff questioned this new situation with her manager Cristian Mulero.  Plaintiff was told that new baristas had joined the location and that Ms. Lam had to have the extra hours to train them.  Plaintiff QUINSEYA JOHNSON wondered out loud why it was that she was no longer doing the trainings, as Plaintiff had done in the past, work perfectly suitable for a pregnant employee.

42.  In addition to Plaintiff's training duties, Plaintiff QUINSEYA JOHNSON also had the task of divvying up the tips at the shop and distributing them evenly amongst "partners."  Likewise and illegally Plaintiff QUINSEYA JOHNSON no longer had that task any more.  Moreover, the task was now being completed by Ms. Lam.

43. Plaintiff QUINSEYA JOHNSON was naturally frustrated by the illegal actions of management of Defendant STARBUCKS, so she went to management and made some very well reasoned and articulated arguments based upon the facts of the situation.

44. Plaintiff QUINSEYA JOHNSON went up to her managers at Defendant STARBUCKS and asked to Defendant STARBUCKS management, why, when Plaintiff had told management about her pregnancy, that management of Defendant STARBUCKS tried to push her onto maternity leave. She further wondered out loud, regarding Ms. Lam, who had accused her of bullying, why it was that this individual had been placated, when no evidence at all existed that Plaintiff had bullied anyone, moreover, Plaintiff said, evidence that it was not occurring had been presented by Plaintiff as described in both this COMPLAINT and to management of Defendant STARBUCKS. Plaintiff QUINSEYA JOHNSON further expressed frustration that not only had Plaintiff QUINSEYA JOHNSON's hours been cut, but that those hours were given to this frustrating individual, Ms. Lam, that had caused her so much headache.

45. As if this was not enough Plaintiff also had to explain the obvious to management of Defendant STARBUCKS that her work responsibilities had illegally been given to this new barista. Plaintiff QUINSEYA JOHNSON had to further explain the obvious that these allegations and the actions taken by Defendant STARBUCKS were non-sense. Management never provided any response to Plaintiff's inquiries.

46. At the beginning of January, 2019 Quinseya was performing her barista duties, this time at the cash register. A customer customer ordered a drink with almond milk. Typically baristas are to charge for specialty milks; however this customer recently had her drink incorrectly made by Plaintiff. As is unwritten company policy, baristas are to compensate good

customers in such a situation. Unfortunately, Rossana Lam, the new barista, the one who had been causing Plaintiff so much headache decided this was another opportunity to cause more headache.  She told Plaintiff, "you need to charge for almond milk."  Plaintiff QUINSEYA JOHNSON explained calmly to Ms. Lam that she should not worry about it and that she, the Plaintiff, did it for a reason.  Obviously Plaintiff was tired of dealing with Ms. Lam but did so calmly and professionally because that is the type of employee Plaintiff QUINSEYA JOHNSON is.

47.     Without further dialogue Rossana turned to manager Cristian Mulero and said "Q (for Quinseya) isn't charging people for milk."  This is not actually true, Plaintiff was charging for specialty milks but was giving this particular customer a courtesy as is unwritten company policy.  However Mr. Mulero told Plaitntiff QUINSEYA JOHNSON that she the Plaintiff was in error.  Plaintiff was frustrated by Mr. Mulero actions because Mr. Mulero saw the whole situation and should have known why Plaintiff comped this particular customer.

48.     After the rush of that moment with this customer and other customers, during a lull at the counter, Plaintiff confronted Ms. Lam.  Plaintiff said in frustration, "why would you do that?" and "you are trying to start trouble." This led to an argument between the two. It became rather animated between the two. Rosanna Lam insulted Plaintiff's pregnancy and rubbed in the fact that she was taking Plaintiff's assignments.

49.     Cristian Mulero asked Plaintiff QUINSEYA JOHNSON to talk to him, and said if she had "accommodations" to a customer's order to tell him first and he would explain to the frustrating barista, Ms. Lam.  This both confirmed Defendant STARBUCKS' unwritten policy

and confirmed that this new barista required special treatment.  Plaintiff complained that this wasn't the protocol prior to this aggravation, but professionally went back to work.

50.  This all happened on a Thursday, the next day, a Friday, Plaintiff QUINSEYA JOHNSON was working again.  During Plaintiff's shift Cristian Mulero asked Plaintiff into an upstairs office.  Mr. Mulero confronted Plaintiff about the incident between her and Ms. Lam the previous day, asking about the incident.  Plaintiff was accommodating of the questions about the previous day.  Then Mr. Mulero confronted Plaintiff with more questions and an accusation based upon "a customer e-mail" that Plaintiff had called Ms. Lam a "chink."

51.  Plaintiff said emphatically that she had never used that word in her life, and pointed Mr. Mulero to the affirmative inquiry "have you ever heard me say anything like that before?"  Mr. Mulero simply said something to the effect of, "I'm just telling you what was said."  Nonetheless Mr. Mulero began reading company policy about bullying and harassment to Plaintiff.  Plaintiff began crying.

52.  Plaintiff QUINSEYA JOHNSON considered her job over the weekend.  She knew she was not a racist, that in fact she had worked so well with Jennifer Chin, but that her job was in jeopardy for something she did not do.

53.  On the next Monday, Plaintiff was working her shift.  At about mid shift Plaintiff came to see the district manager come in to the shop.  Plaintiff went up to the district manager and asked if she (the Plaintiff) could please talk to her, the district manager.  The district manager informed Plaintiff that she had come to speak with her (the Plaintiff).

54.  Plaintiff was asked to an office where both the district manager and Cristian Mulero were in.  They began by asking what had happened on Thursday.  Plaintiff explained the

circumstances to the two.  The two managers of Defendant STARBUCKS began talking about this e-mail that the store had received.  It was explained to Plaintiff that Defendant STARBUCKS does not take this sort of thing lightly.  Plaintiff QUINSEYA JOHNSON explained that she had never been accused of any similar conduct before, in four years of work. Further Plaintiff QUINSYEA JOHNSON explained that this accusation amongst a number of others came form only one person; that she had not been accused or had any problems for the years that she worked for Defendant STARBUCKS, it only stands to reason that these accusations are untrue.  Plaintiff QUINSEYA JOHNSON also pointed out that this nonsense coincided with her pregnancy.  Plaintiff QUINSYEA JOHNSON could see where the conversation was going and she began crying, at the prospects of losing her job.

    55. Plaintiff QUINSEYA JOHNSON was allowed to read the e-mail supposedly sent by this customer but only on the District Manager's phone.  The District Manager was scrolling the screen of her phone and Plaintiff had to read it then and there.  However difficult this may have been, Plaintiff was able to make the clear observation that something was amiss about the e-mail, first it was very long.  Second, it made mention of facts that occurred outside of the incident on Thursday.  Naturally Plaintiff QUINSEYA JOHNSON thought to point out these observations to the Defendant STARBUCKS district manager, but she simply said, that Defendant STARBUCKS did not take such things lightly, regarding bullying and racial slurs.

    56. Despite the questionable nature of this e-mail Plaintiff QUINSEYA JOHNSON was terminated from her position with Defendant STARBUCKS.  This termination was done, as an opportunity presented itself to Defendant STARBUCKS, to fire an employee who was pregnant

13

and needed accommodation for that fact. Plaintiff QUINSEYA JOHNSON lost her job of four (4) years because she was pregnant as the primary reason.

57. At the end of her employment with Defendant STARBUCKS, Plaintiff QUINSEYA JOHNSON was pulling out milk from underneath the bar and lifting to the counter, ground coffee beans by lifting a bag of coffee beans over her head into the grinder, walked up and down stairs to wipe tables, further, Plaintiff QUINSEYA JOHNSON still was asked by management of Defendant STARBUCKS to carry coffee beans from the basement.

58. Plaintiff tried to manage her own workload and do these tasks in moderation by grabbing one bag at a time and such, but it was clear that her duties did not change because of her pregnancy though it had for at least one worker previously. Even this requirement that she lift and bend the whole time she was employed by Defendant STARBUCKS, including the time that she was pregnant was not enough for management of Defendant STARBUCKS who illegally terminated Plaintiff from her employment.

59. Quoree Renae Blount was born on May 10, 2019. Her original due date was June 27, 2019. So Plaintiff QUINSEYA JOHNSON's pregnancy ended in a premature birth of over a month and a half.

60. Plaintiff and her daughter are now healthy and happy.

## CAUSES OF ACTION

### FIRST CLAIM: ILLEGAL DISCRIMINATION

**ILLEGAL EMPLOYMENT PRACTICES BASED UPON PREGNANCY AS DESCRIBED IN 42 U.S. Code § 2000e–2**

**AGAINST Defendant STARBUCKS**

61. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

62. Plaintiff, as stated generally in this COMPLAINT *supra,* was discriminated against because of her pregnancy by her employer, Defendant STARBUCKS.

63. Plaintiff as stated in this COMPLAINT *supra* was entitled to light work, requested such accommodations and was never provided such accommodation by her employer, Defendant STARBUCKS.

64. Thus the prohibition against unlawful employment practices made unlawful by Title VII of the Civil Rights Act of 1964, contained in 42 U.S.C. § 2000e-2, as amended by the Pregnancy Discrimination act of 1978, 42 U.S.C. § 2000e(k) was violated by Defendant STARBUCKS.

### SECOND CLAIM: ILLEGAL DISCRIMINATION

**ILLEGAL EMPLOYMENT PRACTICES BASED UPON PREGNANCY AS DESCRIBED IN New York State Human Rights Law N.Y. Executive Law, Article 15 § 296.**

**AGAINST Defendant STARBUCKS**

65. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

66. Plaintiff, as stated generally in this COMPLAINT *supra,* was discriminated against because of her pregnancy by her employer, Defendant STARBUCKS.

67. Plaintiff as stated in this COMPLAINT *supra* was entitled to light work, requested such accommodations and was never provided such accommodation by her employer, Defendant STARBUCKS.

68. Plaintiff as stated in this COMPLAINT *supra* was illegally compelled to take a leave of absence by her employer Defendant STARBUCKS.

69. Defendant STARBUCKS illegally refused to provide reasonable accommodations on behalf of Plaintiff QUINSEYA JOHNSON in relation with her employment with Defendant and her pregnancy.

70. The Defendants have colluded to willfully violate the anti-discrimination portion of the New York State Human Rights Law N.Y. Executive Law, Article 15 § 296.

## THIRD CLAIM: ILLEGAL DISCRIMINATION

**ILLEGAL EMPLOYMENT PRACTICES BASED UPON PREGNANCY AS DESCRIBED IN New York City Human Rights Law 8 Admin. Code of the City of New York § 8-107.**

**AGAINST Defendant STARBUCKS**

71. Plaintiff re-alleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

72. Plaintiff, as stated generally in this COMPLAINT *supra,* was discriminated against because of her pregnancy by her employer, Defendant STARBUCKS.

73. Plaintiff as stated in this COMPLAINT *supra* was entitled to light work, requested such accommodations and was never provided such accommodation by her employer, Defendant STARBUCKS.

74. Plaintiff as stated in this COMPLAINT *supra* was illegally compelled to take a leave of absence by her employer, Defendant STARBUCKS.

75. Defendant STARBUCKS illegally refused to provide reasonable accommodations on behalf of Plaintiff QUINSEYA JOHNSON in relation with her employment with Defendant and her pregnancy.

**WHEREFORE**, Plaintiff demands the following relief jointly and severally against all of the Defendants:

a. Compensatory damages in the amount to be determined by a jury;

b. Punitive damages in an amount to be determined by a jury;

c. The convening and empaneling of a jury to consider the merits of the claims herein;

d. Costs and interest and attorney's fees;

e. Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
December 25, 2019

        /s/ Kareem E. Abdo
        Kareem E. Abdo, Esq.
        260 Madison Ave.
        Suite 204
        New York, NY 10016
        Tel: (646) 286-6472
        Fax: (646) 663-3921
        Email:  kareemabdolaw@gmail.com

        *Attorney for Plaintiff*